**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | |
|---|---|
| JASON MILLS, | : Case No. 3:19-cv-90 |
| Plaintiff, | : |
| vs. | : Magistrate Judge Sharon L. Ovington |
| | : (by full consent of the parties) |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : |
| Defendant. | : |

**DECISION AND ENTRY**

**I.   Introduction**

Plaintiff Jason Mills brings this case challenging the Social Security Administration's denial of his applications for period of disability, Disability Insurance Benefits, and Supplemental Security Income.  He applied for benefits on June 8, 2020, asserting that he could no longer work a substantial paid job.  Administrative Law Judge (ALJ) Kevin R. Barnes concluded that he was not eligible for benefits because he was not under a "disability" as defined in the Social Security Act.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #9), the Commissioner's Memorandum in Opposition (Doc. #13), Plaintiff's Reply (Doc. #14), and the administrative record (Doc. #6).

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ Barnes' non-disability decision.

## II.     Background

Plaintiff asserts that he has been under a "disability" since February 1, 2014. He was thirty-four years old at that time and was therefore considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. §§ 404.1563(d), 416.963(d). He has a limited education. *See id.* §§ 404.1564(b)(3), 416.964(b)(3).[1]

The evidence of record is sufficiently summarized in the ALJ's decision (Doc. #6, *PageID* #s 62-80); Plaintiff's Statement of Errors (Doc. #9); the Commissioner's Memorandum in Opposition (Doc. #13); and Plaintiff's Reply (Doc. #14). Rather than repeat these summaries, the pertinent evidence will be discussed when addressing the parties' arguments.

## III.    Standard of Review

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from

---

[1] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

2

performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance …." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or

3

deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV.     The ALJ's Decision

As noted previously, it fell to ALJ Barnes to evaluate the evidence connected to Plaintiff's application for benefits.  He did so by considering each of the five sequential steps set forth in the Social Security Regulations.  *See* 20 C.F.R. § 404.1520.  He reached the following main conclusions:

| | | |
|---|---|---|
| Step 1: | Plaintiff has not engaged in substantial gainful employment since February 1, 2014. |
| Step 2: | He has the severe impairments of degenerative disc disease of the lumbar and thoracic spines, diabetic neuropathy, and affective, anxiety, and personality disorders. |
| Step 3: | He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | His residual functional capacity, or the most he could do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "medium work … subject to the following limitations: (1) he must be permitted the option to sit or stand alternatively every 60 minutes for 10-15 minutes at a time with the individual not off task more than 10% of the day; (2) no crawling or climbing of ladders, ropes, or scaffolds; (3) occasional balancing, stooping, crouching, or kneeling; (4) he should avoid exposure to hazardous machinery and unprotected heights; (5) work is limited to simple, routine, and repetitive tasks performed in an environment free of fast-paced production requirements and involving only simple work-related decisions, and few, if any workplace changes; and ([6]) only occasional interaction with the public and coworkers with no tandem tasks." |
| Step 4: | He is unable to perform any of his past relevant work. |

      Step 5:     He could perform a significant number of jobs that exist in the national economy.

(Doc. #6, *PageID* #s 62-80). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 80.

## V. Discussion

Plaintiff contends that the ALJ erred in evaluating the medical source opinions and his credibility and symptom severity. The Commissioner maintains that substantial evidence supports the ALJ's decision.

### A. Medical Opinions

In November 2015, Plaintiff's treating physician, Scott R. Vosler, D.O., completed a medical statement. (Doc. #6, *PageID* #559). He diagnosed Plaintiff with C-HNP (cervical-herniated nucleus pulposus) and PTSD (post-traumatic stress disorder). He indicated that Plaintiff's prognosis is poor. Dr. Vosler opined that, in an eight-hour workday, Plaintiff could stand/walk on a sustained basis for between thirty minutes and two hours. He could sit for between thirty minutes and two hours. He could do simple grasping and fine manipulation but could not push/pull or repetitively operate foot controls. Plaintiff could occasionally lift up to twenty pounds and never lift more. He could occasionally bend and squat. He could not crawl, climb, or attend a two-hour appointment with the ability to sit and stand as needed. He could occasionally remember location and procedures; understand, remember, and carry out instructions; maintain attention and concentration; perform activities within a schedule; sustain an ordinary routine, and make simple decisions. He could not interact appropriately with the general

5

public, ask simple questions, or ask for assistance.  Dr. Vosler opined that Plaintiff is unable to perform employment and/or training activities for more than twelve months, and Dr. Vosler indicated he should apply for disability benefits.  *Id.* at 560.

Dr. Vosler completed the same medical statement in November 2017.  *Id.* at 556-57.  He diagnosed PTSD, lumbago, and HNP.  *Id.* at 556.  He affirmed most his previous opinions and added that on a sustained basis in an eight-hour workday, Plaintiff could alternately sit or stand for between two-and-a-half and four hours, provided he has opportunity to change his position.

In October 2015, Karla Voyten, Ph.D., reviewed Plaintiff's records.  *Id.* at 124-34.  She indicated that Plaintiff had three severe impairments:  affective disorder, anxiety disorder, and drugs, substance addiction disorder.  *Id.* at 128.  She opined Plaintiff could perform simple to moderately complex work tasks.  *Id.* at 130.  He could perform work that has limited production standards, is not fast paced, and has limited superficial social interaction.  *Id.* at 131.

Kathleen Malloy, Ph.D., reviewed Plaintiff's records in May 2016.  *Id.* at 136-50.  She generally affirmed Dr. Voyten's opinion but added a few limitations.  Dr. Malloy opined that Plaintiff could perform work that has limited superficial interaction with coworkers and supervisors and very limited to no interaction with the general public.  *Id.* at 148.  Further, she noted that stress would increase Plaintiff's irritability, anxiety, and depression.  He would work best in a static environment where change is infrequent and explained in advance.

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions. "Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers,* 486 F.3d at 242 (citations omitted). The rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry*, 741 F.3d at 723.

If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

The Regulations also require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Id*. (quoting Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). The goal is to make clear to any subsequent reviewer the weight given and the reasons for that weight. *Id*. Substantial evidence must support the reasons provided by the ALJ. *Id*.

The ALJ found that Dr. Vosler's opinions were not entitled to controlling or deferential weight. (Doc. #6, *PageID* #78). "Dr[.] Vosler's records reflect essentially normal mental and physical function and are in no way consistent with and cannot be reconciled with his significantly limiting assessments. In fact, his drastically limiting assessments directly contradict the clinical observations contained in his own treatment notes." *Id.* The ALJ assigned his opinion "little, if any weight due to the lack of supporting objective or clinical findings in his own records and the overall evidentiary record." *Id.*

Looking at Dr. Vosler's opined mental limitations, the ALJ found that "Dr. Vosler reported significant mental difficulty, and he has prescribed medication" for Plaintiff's mental impairments. But, Plaintiff "routinely denied depression and suicidal or homicidal ideation and mini-mental status examinations consistently reported normal mood and affect." *Id.* The ALJ recognized that Dr. Vosler noted that Plaintiff reported increased stress once and, upon Plaintiff's request, Dr. Vosler referred him to a psychiatrist.

Substantial evidence does not support the ALJ's conclusion that Dr. Vosler's opinion was not supported by his treatment notes. The ALJ overlooked or ignored some of Dr. Vosler's relevant notes. For instance, in November 2015, Plaintiff reported to Dr. Vosler that he was having suicidal thoughts but no plans. *Id.* at 337. Dr. Vosler noted that his mood was anxious. *Id.* Plaintiff reported in August 2016 that Paxil was not helping and requested new medication. *Id.* at 393. Dr. Vosler prescribed Prozac. *Id.* In

8

September 2016, Plaintiff reported that Prozac was not providing any relief and requested that his dose be increased. *Id.* at 396.

Furthermore, the ALJ overlooked treatment notes from Grandview Hospital that also support Dr. Vosler's opinion. Specifically, in April 2018, EMS took Plaintiff to Grandview Hospital's emergency department for a psychiatric evaluation. *Id.* at 638. He reported calling the police because "that girl got too loud." *Id.* He said his wife was antagonizing him and he had thoughts of wanting to hurt her so he called the police because he did not want to actually hurt her. *Id.* He denied having visual or auditory hallucinations but reported that he can see demons and people. The physician referred him for outpatient treatment. *Id.* at 642.

Additionally, the ALJ does not acknowledge that there may be a reason Plaintiff does not often discuss his psychological problems. Plaintiff's therapist, Ms. Richied-Rust, LPC, explained that Plaintiff has difficulty discussing his mental health problems with others because he is "generally paranoid and reclusive." *Id.* at 431. However, "he describes a newfound realization that he needs to be honest with at least some professionals about his severe PTSD symptoms and past abuse." *Id.* at 429. "Jason does not believe he can ever improve. His main purpose was to 'confess' and stop being 'fake.' This will allow him the ability to disclose during Social Security evaluations. He was not able to do this during 2 past evaluations ….." *Id.* at 431. Although Plaintiff hoped to be able to discuss his issues with some other doctors, he was not "ready … to move into preparation stage for actual treatment of his PTSD traits." *Id.*

9

Further the ALJ does not acknowledge that Plaintiff's therapist's notes are consistent with and strongly support Dr. Vosler's opinions. For instance, in June 2015, Ms. Richied-Rust noted that Plaintiff had agitated activity; pressured, intense, and rapid speech; and persecutory delusions. *Id.* at 427-28. His thought process was blocked, and he had racing thoughts and flight of ideas. *Id.* at 428. He reported, "I have thoughts or suicide but I will not do it[ ]cause of my kids. I hate myself and it's 'cause of my upbringing." *Id.* at 421. She listed his many symptoms of depression including low motivation, loss of interest in usual pleasurable activities, social withdrawal, suicidal thought, psychomotor agitation, fluctuating appetite, difficulty concentrating, insomnia, procrastination, feelings of worthlessness "especially [because] he has no job." *Id.* at 424. He also experienced anxiety as evidenced by "nervous, racing thoughts[,] shaking, biting his nails; anxiety attacks just in big crowds where he experiences palpitations and blurred vision, racing speech in session reflecting his racing thoughts." *Id.* He reported having panic attacks "nearly daily" until his girlfriend started running the errands. *Id.* In addition, he has symptoms of traumatic stress such as flashbacks, nightmares, efforts to avoid thoughts or conversations about the traumas, desire to detach from others, irritability/anger, hypervigilance, lack of trust/paranoia, emotionally numb, and acting or feeling as if the abusive past is happening again. *Id*. Ms. Richied-Rust noted that "Impact of functioning is especially severe in the area of occupation, as he often perceives supervisors as 'bullies,' which drives him to quit that employment." *Id*.

In June 2016, Plaintiff saw Nancy Horn, LPCC-S. *Id*. at 436. She noted, "Patient maintains he cannot tolerate relationship with bosses and coworkers." *Id.* at 438. She

10

indicated that he was "highly socially withdrawn." *Id.* at 439.  He had a high level of irritability and was unable to cope with daily tasks and routines.  *Id*.  She noted he had symptoms of traumatic stress similar to those identified in his previous appointment.  *Id*.  He had agitated activity and a mistrustful demeanor.  *Id*. at 441.  His mood was depressed, anxious, and irritable with a congruent affect.  *Id*. at 443.

Plaintiff returned for counseling with Ms. Richied-Rust in July 2016.  *Id*. at 449.  He reported that he had no motivation and was "paranoid with no trust in others as well as a strong aversion to being with other people …."  *Id*. at 450.  She noted that he "gets very anxious in session with racing thoughts and some loose associations."  *Id*. at 451.  In August 2016, she noted, "Jason continues to display severe social anxiety and remains socially isolated with odd paranoid views of the world.  He brought in a large intricate poster he painted of his view of Satan ruling the world."  *Id*. at 453.  Ms. Richied-Rust indicated in September 2016 that Plaintiff "sweats profusely, nervous/agitated mannerisms, verbiage includes some paranoid bizarre thinking.  Looks depressed and anxious.  Racing pressured speech.  Has some insight."  *Id*. at 456.  Similarly, in November 2016, she noted that he was "anxious, racing speech, with poor articulation; admits to one visual hallucination recently."  *Id*. at 460.  Further, "Jason continues to struggle with his anxiety that keeps him from interacting in the public arena or being around people within his home when they 'stress me out.'"  *Id*. at 462.

In February 2017, Plaintiff reported significant improvement in his depression to Ms. Richied-Rust.  *Id*. at 465.  However, he still had a lack of motivation and his "social anxiety fueled by PTSD paranoia remains …."  *Id*.  Unfortunately, in May 2017, she

11

noted that he was "very anxious, agitated, poor grooming, frustrated, overwhelmed, garbled speech due to loss of teeth." *Id*. at 467. He also reported that he was "too agitated and upset to continue attending sessions, so [he] wants the chart to be closed." *Id*. at 469.

The ALJ only refers Plaintiff's therapist's notes by citation. *Id*. at 76. He assigned her opinion that Plaintiff is psychiatrically disabled or unable to work "minimal, if any weight in light of the overall record." *Id*. However, the ALJ overlooked that Plaintiff's therapist's notes are consistent with and strongly support Dr. Vosler's opinion.

Furthermore, the ALJ fails to acknowledge record-reviewing psychologist Dr. Malloy's opinion—that Plaintiff was limited to superficial interaction with coworkers and supervisors and very limited to no interaction with the general public—is consistent with Dr. Vosler's opinion. *Id*. at 148.

The ALJ largely ignores or overlooks much of the evidence that supports Dr. Vosler's opinions. This constitutes error : "Substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Soc. Sec.,* 531 Fed Appx. 636, 641 (6th Cir. Aug. 6, 2013) (quoting *Garner v. Heckler,* 745 F.2d 383, 388 (6th Cir. 1984)).

In sharp contrast to the "little if any weight" he assigned Dr. Vosler's opinion, the ALJ assigned "great weight" to the opinions of the record-reviewing psychologists "with one caveat." (Doc. #6, *PageID* #75) (citation omitted). Interestingly, the ALJ did not

12

mention that one of the record-reviewing psychologists, Dr. Malloy, assigned "great weight" to Dr. Vosler's opinions.  He does not explain how he could rely on Dr. Malloy's opinions despite Dr. Malloy relying on Dr. Vosler's opinion.

Nevertheless, the ALJ found that the record-reviewing psychologists' opinions were consistent with examining psychologist Dr. Rosenthal's opinion and Dr. Vosler's treatment notes.  The ALJ, however, rejected their opinion that Plaintiff was limited to superficial interaction with coworkers and supervisors and no interaction with the general public.  He found, "The preclusion of more than very little contact with the general public is based solely on the claimant's subjective statements and his statement that he worked best in jobs he performed alone." *Id*. at 76.  The ALJ pointed out that Plaintiff was able to attend a weekend retreat without difficulty and that treating sources have not noted significant difficulty other than Plaintiff's allegations.  Thus, the ALJ concluded that limiting Plaintiff to occasional contact with the general public accounted for Plaintiff's "alleged difficulty." *Id*.  The ALJ also took issue with the record-reviewing psychologists' use of the word "superficial," noting that it is not defined for Social Security purposes.  The ALJ concluded, "given the absence of any definition of superficial in Social Security policy, it is not reasonable to find that superficial somehow his more restrictive than occasional, particularly in light of the definition of occasional as the claimant is noted consistently to be cooperative with no documentary evidence of significant difficulty relating to others." *Id*.

Substantial evidence does not support the ALJ's rejection of Dr. Malloy's opinions regarding Plaintiff's social interaction limitations.  The ALJ failed to recognize that, as

explained in detail above, Ms. Richied-Rust's notes strongly support Dr. Malloy's social-interaction limitations. Furthermore, the ALJ incorrectly concluded that Dr. Malloy's opinion was only based on Plaintiff's subjective statements and his statement to Dr. Rosenthal that he worked best in jobs by himself. Given that Dr. Vosler opined Plaintiff could not interact appropriately with the general public and given that Dr. Malloy assigned Dr. Vosler's opinion "great weight," it is likely that she based her opinion, at least in part, on Dr. Vosler's opinion. *See id*. at 144. Additionally, they found Plaintiff's statements about his psychological limitations were "mostly credible," explaining that "[Plaintiff] does avoid most people minus his significant other, does not spend much time around people." *Id*. at 130, 144.

      The ALJ erred in failing to limit Plaintiff's interaction with supervisors. Dr. Malloy opined Plaintiff can perform work that has limited superficial social interaction with coworkers and supervisors. *Id*. at 148. This is supported by Ms. Richied-Rust's note that "he often perceives supervisors as 'bullies,' which drives him to quit that employment." *Id.* at 424. Yet, the ALJ only limited Plaintiff to occasional interaction with the public and coworkers. *Id*. at 71. The ALJ did not explain why he omitted any limitations regarding Plaintiff's interactions with supervisors. This omission constitutes error. The ALJ must meaningfully explain why certain limitations are not included in the residual functional capacity determination—especially when such limitations are set forth in opinions the ALJ weighs favorably. *Wolder v. Comm'r of Soc. Sec.*, No. 3:19-CV-110, 2019 WL 5586887, at *5 (S.D. Ohio Oct. 30, 2019) (Newman, M.J.), *report and*

14

*recommendation adopted*, No. 3:19-CV-110, 2019 WL 6171061 (S.D. Ohio Nov. 20, 2019) (Rose, D.J.) (citations omitted).

Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.[2]

**B.    Remand**

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or

---

[2] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's other challenges to the ALJ's decision is unwarranted.

15

where the evidence of disability is strong while contrary evidence is lacking.  *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is lacking.  However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above.  On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether his applications for Disability Insurance Benefits and Supplemental Security Income should be granted.

## IT IS THEREFORE ORDERED THAT:

1. The Commissioner's non-disability finding is vacated;

2. No finding is made as to whether Plaintiff Jason Mills was under a "disability" within the meaning of the Social Security Act;

3. This matter is **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Entry; and

4. The case is terminated on the Court's docket.

Date:  September 11, 2020                    *s/Sharon L. Ovington*
                                             Sharon L. Ovington
                                             United States Magistrate Judge